# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 17-1305V

| | |
|---|---|
| * * * * * * * * * * * * * | Chief Special Master Corcoran |
| TYLER HERVEY, * | |
| Petitioner, * | |
| v. * | October 8, 2026 |
| SECRETARY OF HEALTH AND HUMAN SERVICES, * | |
| Respondent. * | |
| * * * * * * * * * * * * * | |

*Lisa A. Roquemore,* Law Office of Lisa A. Roquemore, Rancho Santa Margarita, CA, for Petitioner.

*Dorian Hurley,* U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION GRANTING IN PART MOTION FOR FINAL AWARD OF ATTORNEY'S FEES AND COSTS[1]

On September 21, 2017, Tyler Hervey[2] filed a petition for compensation under the National Vaccine Injury Compensation Program (the "Vaccine Program"), 42 U.S.C. § 300aa-10, et seq.[3] (the "Vaccine Act"). Petitioner alleged that he suffered cerebellitis as a result of receiving a seasonal influenza vaccine ("FluMist vaccine") on October 30, 2014. Petition (ECF No. 1). The

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). This means the Decision will be available to anyone with access to the internet. In accordance with Vaccine Rule 18(b), each party has fourteen (14) days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access. Otherwise, the whole Decision will be available to the public in its present form.

[2] This petition for compensation was initially filed by Mr. Hervey's parents, Selwyn and Marylou Catoe Hervey, while he was a minor. During the course of litigation, Mr. Hervey reached the age of majority and was substituted as the petitioner in this matter. Order, issued Oct. 15, 2025 (ECF No. 118).

[3] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018), omitting the statutory prefix.

special master to whom this case had been assigned found that the onset of Petitioner's condition predated the subject vaccination, however, and ultimately dismissed the Petition. *Hervey v. Sec'y of Health & Human Servs.*, No. 17-1305V, 2025 WL 3633602 (Fed. Cl. Spec. Mstr. Nov. 12, 2025) (ECF No. 119).

On February 18, 2026, Petitioner filed his sole application for attorney's fees and costs (ECF No. 122) (the "Fees Motion"), seeking an award of $208,910.36 (representing $178,804.80 in fees;[4] plus $955.56 in costs incurred by Petitioner's counsel, Ms. Lisa A. Roquemore, Esq.; plus $25,900.00 incurred by expert Dr. Lawrence Steinman;[5] plus $3,250.00 incurred by Dr. W. Lawrence Drew).[6] Petitioner also provided a signed statement (ECF No. 122-5) representing that he incurred $4,998.81 in unreimbursed litigation costs. *See also* Petitioner's Litigation Expenses (ECF No. 122-6). Thus, the total amount sought by Petitioner is **$213,909.17**.

Respondent reacted to the Fees Motion on March 4, 2026, deferring to the Court regarding whether the statutory requirements for a fees award were met in this case and leaving the amount to be awarded to my discretion. Respondent's Response (ECF No. 123). Petitioner did not file a reply.

Although the claim was unsuccessful, I find it possesses sufficient reasonable basis to permit an award of attorney's fees and costs, albeit with a reduction.

## I. Reasonable Basis for the Claim

Motivated by a desire to ensure that petitioners have adequate assistance from counsel when pursuing their claims, Congress determined that attorney's fees and costs may be awarded even in unsuccessful claims. H.R. REP. NO. 99-908, at 22 *reprinted in* 1986 U.S.C.C.A.N. 6344, 6363; *see also Sebelius v. Cloer*, 569 U.S. 369, 380 (2013) (discussing this goal when determining that attorney's fees and costs may be awarded even when the petition was untimely filed). As Judge Lettow noted in *Davis*, "the Vaccine Program employs a liberal fee-shifting scheme." *Davis v. Sec'y of Health & Human Servs.*, 105 Fed. Cl. 627, 634 (2012). It may be the only federal fee-shifting statute that permits unsuccessful litigants to recover fees and costs.

However, Congress did not intend that *every* losing petition be automatically entitled to attorney's fees. *Perreira v. Sec'y of Health & Human Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994). And there is also a prerequisite to even obtaining fees in an unsuccessful case. The special master

---

[4] This amount reflects that Ms. Roquemore voluntarily decreased the total requested fees by $597.70 to account for 4.3 hours charged at a rate of $139.00 for electronic filing services.

[5] Dr. Lawrence Steinman was retained as an expert in neurology, immunology, and neuroimmunology. *Hervey*, 2025 WL 3633602 at *9. He authored five reports that were filed in this matter. Exhibit 11, filed Apr. 9, 2018 (ECF No. 19-1); Exhibit 50, filed July 1, 2019 (ECF No. 47-1); Exhibit 58, filed Sept. 30, 2020 (ECF No. 64-1); Exhibit 73, filed June 17, 2021 (ECF No. 76-1); and Exhibit 89, filed July 22, 2022 (ECF No. 104-1).

[6] Dr. W. Lawrence Drew was retained as an infectious disease expert. *Hervey*, 2025 WL 3633602 at *11. He provided two reports. Exhibit 65, filed Oct. 6, 2020 (ECF No. 65-1); Exhibit 97, filed Aug. 16, 2022 (ECF No. 106-1).

or court may award attorney's fees and costs in a case in which compensation was not awarded only if "that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1). Reasonable basis is a prerequisite to a fee award for unsuccessful cases—but establishing it does not automatically *require* an award, as special masters are still empowered by the Act to deny or limit fees. *James-Cornelius on behalf of E. J. v. Sec'y of Health & Human Servs*., 984 F.3d 1374, 1379 (Fed. Cir. 2021) ("even when these two requirements are satisfied, a special master retains discretion to grant or deny attorneys' fees").

As the Federal Circuit has explained, whether a discretionary fees award is appropriate involves two distinct inquiries, but only reasonable basis is at issue herein.[7] Reasonable basis is deemed "an objective test, satisfied through objective evidence." *Cottingham v. Sec'y of Health & Human Servs*., 971 F.3d 1337, 1344 (Fed. Cir. 2020) ("*Cottingham I*"). "The reasonable basis requirement examines "not at the likelihood of success [of a claim] but more to the feasibility of the claim." *Turner*, 2007 WL 4410030, at *6 (quoting *Di Roma v. Sec'y of Health & Human Servs.,* No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)). The Federal Circuit recently explained "that a reasonable basis analysis is limited to objective evidence, and that subjective considerations, such as counsel's subjective views on the adequacy of a complaint, do not factor into a reasonable basis determination." *James-Cornelius*, 984 F.3d at 1379.

Although clearly easier to meet than the preponderant standard required for compensation, "courts have struggled with the nature and quantum of evidence necessary to establish a reasonable basis." *Wirtshafter v. Sec'y of Health & Human Servs.*, 155 Fed. Cl. 665, 671 (Fed. Cl. 2021). "[I]t is generally accepted that 'a petitioner must furnish some evidence in support of the claim.' " *Id*. Citing the prima facie elements of a successful claim described in Section 11(c)(1), the Federal Circuit recently instructed that the level of the objective evidence sufficient for a special master to find reasonable basis should be "more than a mere scintilla but less than a preponderance of proof." *Cottingham I*, 971 F.3d at 1345-46. "This formulation does not appear to define reasonable basis so much as set its outer bounds." *Cottingham v. Sec'y of Health & Human Servs.*, 159 Fed. Cl. 328, 333, (Fed. Cl. 2022) ("*Cottingham II*"), *aff'd without op.*, 2023 WL 754047 (Fed. Cir. Nov. 14, 2023). "[T]he Federal Circuit's statement that a special master 'could' find reasonable basis based upon more than a mere scintilla does not mandate such a finding." *Cottingham II*, 159 Fed. Cl. at 333 (citing *Cottingham I*, 971 F.3d at 1346).

Furthermore, the issue of reasonable basis is not a static inquiry. The reasonable basis that existed when a claim was filed may cease to exist as further evidence is presented. *Perreira*, 33 F.3d at 1377. In *Perreira*, the Federal Circuit affirmed a special master's determination that

---

[7] Claimants must also establish that the petition was brought in good faith. *Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017) (quoting *Chuisano v. Sec'y of Health & Human Servs.*, 116 Fed. Cl. 276, 289 (2014)). "[T]he 'good faith' requirement ... focuses upon whether petitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Human Servs.*, No. 99-0544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). But good faith is not disputed herein, and I do not ascertain evidence in the record calling it into question.

reasonable basis was lost after Petitioner's "expert opinion, which formed the basis of the claim, was found to be unsupported by either medical literature or studies." *Id*. at 1376.

Petitioner ultimately did not establish entitlement to compensation by a preponderance of the evidence. The previous special master found, based in part on the contemporaneous medical records, that Petitioner's neurological symptoms (including dizziness) likely began before the subject vaccination, and therefore could not have been caused by the FluMist vaccine. *Hervey*, 2025 WL 3633602 at *16. That issue was not newly identified at the conclusion of the case, moreover. Respondent expressly raised the issue of pre-vaccination symptoms in his Rule 4(c) report, filed February 13, 2018. (ECF No. 17) ("[i]n hindsight, the first clinical manifestation of the onset of [Petitioner's] brain injury likely began prior to his flu vaccination. On or about October 29, 2014, [Petitioner] began to suffer dizziness, which was reported to his [primary care provider] on October 30, 2014, prior to receiving the flu vaccine." (citations removed)).

Thus, counsel was on notice relatively early in the litigation that onset presented a substantial obstacle to Petitioner's claim. Yet the case continued for several years thereafter. Petitioner's experts maintained that onset occurred after vaccination, though the special master found that their opinions did not squarely reconcile those assertions with the contemporaneous documentation of neurological symptoms reported leading up to the subject vaccination. *E.g.*, Scheduling Order, issued Jan. 24, 2020 (ECF No. 57) at 1, 3 (special master noting that the pediatrician recorded report of Petitioner "feeling dizzy" before administering him the FluMist vaccine later in the encounter; and noting that Dr. Steinman had not addressed that report.); Exhibit 58 (ECF No. 64-1) at 1 (Dr. Steinman deferring to Dr. Drew); Exhibit 65 (ECF No. 65-1) at 3 (Dr. Drew acknowledging the symptoms reported immediately before the subject vaccination and ascribing Petitioner's pre-vaccination dizziness to possible dehydration and to his documented, active parainfluenza infection). Instead, they continued to attribute those earlier symptoms largely to Petitioner's presumed dehydration, as evidenced by the mother's report and the pediatrician's "recommendation of hydration.". *See, e.g.*, Exhibit 97 (ECF No. 106-1) at 4 (Dr. Drew maintaining that "the headache and dizziness where more likely due to dehydration" and that Petitioner "definitely had no evidence of cerebellitis and his neurologic illness did *not* result from his [] parainfluenza infection").

Thus, the claim was not particularly robust and had evident problems early on in the matter that were not successfully addressed. But the present inquiry regarding the reasonable basis for Petitioner's application for attorney's fees and costs is different and governed by a substantially lower evidentiary threshold than what governs entitlement. Petitioner supplied objective support, including medical records and seven expert reports for the theory he advanced, which amounts to more than a mere scintilla of evidence and is sufficient to make the claim feasible for purposes of Section 15(e)(1). For these reasons, I find that the claim possessed a reasonable basis until it was dismissed. Therefore, the only remaining question is the appropriate amount of the attorney's fees and costs to be awarded.

## II. Calculation of Fees

### A. Hourly Rate

Only "reasonable" fees or costs may be awarded in the Program. Determining the appropriate amount of the fees award is a two-part process. The first part involves application of the lodestar method—"multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1347–48 (Fed. Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The second part involves adjusting the lodestar calculation up or down to take relevant factors into consideration. *Id.* at 1348. This standard for calculating a fee award is considered applicable in most cases where a fee award is authorized by federal statute. *Hensely v. Eckerhart*, 461 U.S. 424, 429–37 (1983).

An attorney's reasonable hourly rate is determined by the "forum rule," which bases the proper hourly rate to be awarded on the forum in which the relevant court sits (Washington, D.C., for Vaccine Act cases), *except* where an attorney's work was not performed in the forum and there is a substantial difference in rates (the so-called "*Davis* exception"). *Avera*, 515 F.3d at 1348 (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency*, 169 F.3d 755, 758 (D.C. Cir. 1999)). A 2015 decision established the hourly rate ranges for attorneys with different levels of experience who are entitled to the forum rate in the Vaccine Program. *See McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 20115 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

Petitioner requests the following rates for his attorney, based on the years in which work was performed:

| **Year** | **Hourly Rate Requested by Ms. Roquemore** | **Hourly Rate Requested for Paralegal Work** |
|---|---|---|
| **2017** | $409.00 | $138.00 |
| **2018** | $409.00 | $138.00 |
| **2019** | $421.00 | $139.00 |
| **2020** | $421.00 | $139.00 |
| **2021** | $447.00 | $139.00 |
| **2022** | $447.00 | $139.00 |
| **2023** | $475.00 | $139.00 |
| **2024** | $475.00 | $139.00 |
| **2025** | $475.00 | $139.00 |

| | | |
|---|---|---|
| **2026** | $499.00 | $150.00 |

Fees Motion at 17-18; Firm Invoices (ECF No. 122-2).

Ms. Roquemore has practiced law for thirty-six years and has been admitted to practice before the Program since 1998. Since then, she has handled a large number of Program cases. She practices in Southern California—a jurisdiction that has been deemed "in forum" and thus entitles her to rates commensurate with what was established in *McCulloch*. *See Davis v. Sec'y of Health & Human Servs.*, No. 14-978V, 2017 WL 656304, at *2 (Fed. Cl. Spec. Mstr. Jan. 23, 2017). The requested rates are also mostly consistent with what has previously been awarded for Ms. Roquemore's time, in accordance with the Office of Special Master's fee schedule.[8] *E.g.*, *White v. Sec'y of Health & Human Servs*., No. 20-1319V, 2026 WL 2474841, at *4 (Fed. Cl. Spec. Mstr. July 24, 2026); *Basdakis v. Sec'y of Health & Human Servs*., No. 20-1158V, 2025 WL 455394, at *2 (Fed. Cl. Spec. Mstr. Jan. 16, 2025); *Lancaster v. Sec'y of Health & Human Servs.*, No. 19-1546V, 2023 WL 5798010 (Fed. Cl. Spec. Mstr. July 17, 2023).

All of the proposed rates will be utilized, with one exception. From January through September 2022, Ms. Roquemore charged an hourly rate of $447.00 (consistent with her 2021 rate). She thereafter appears to have raised her hourly rate to $475.00 an hour in October 2022, and continued to charge at that rate through the end of that year—reflecting a midyear increase of $28.00. ECF No. 122-2 at 117–40.

Attorneys may have sound business reasons for changing rates in the midst of a single calendar year. And the size of the increase at issue is not *per se* objectionable. But it is not the practice of the special masters to afford mid-year rate increases to attorneys under any circumstances. *Richards v. Sec'y of Health & Human Servs.*, No. 20-0984V, 2023 WL 2263277, at *2 (Fed. Cl. Spec. Mstr. Feb. 28, 2023). Accordingly, I reduce Ms. Roquemore's rate charged for the second half of 2022 to $447.00 per hour. This results in a reduction of **$39.20** in attorney's fees.[9]

B. <u>Time Devoted to the Matter</u>

Petitioner seeks $178,804.80 in attorney's fees for litigating a claim that ultimately failed on a threshold factual issue. Fees Motion at 2. The amount is substantial, particularly in light of that result. In addition, Ms. Roquemore has repeatedly been warned by the special masters to avoid overbilling on the matters in which she appears. *See, e.g.*, *Bohannon v. Sec'y of Health & Human Servs.*, No. 23-235V, 2025 WL 2955228, at *3-4 (Fed. Cl. Spec. Mstr. Sept. 12, 2025) (finding

[8] OSM Attorneys' Forum Hourly Rate Fee Schedule, https://www.cofc.uscourts.gov/osm-attorneys-forum-hourly-rate-fee-schedules (last visited Oct. 8, 2026).

[9] Calculated by: (1.4 hours billed at $475.00 in 2022) x ($475.00 - $447.00) = $39.20 (ECF No. 122-2 at 137–40).

that Ms. Roquemore's six-figure fee for a case that "was not *ever* likely to succeed" was unwarranted, and reducing fees by 30%); *Iniguez v. Sec'y of Health & Human Servs.*, No. 18-1537V, 2023 WL 3729843, at *4–6 (Fed. Cl. Spec. Mstr. May 30, 2023) (finding that Ms. Roquemore's nearly six-figure fee for a case that settled for $10,000.00 reflected a lack of billing judgment, and reducing fees by 15%); *Sanchez by & through Sanchez v. Sec'y of Health & Human Servs.*, No. 11-685V, 2021 WL 6211169, at *13-15 (Fed. Cl. Dec. 8, 2021) (special master finding that Ms. Roquemore exercised poor billing judgment, and reducing fees by 20%); *D.G. v. Sec'y of Health & Human Servs.*, No. 11-577V, 2020 WL 3265015, at *4-6 (Fed. Cl. Spec. Mstr. May 22, 2020) (special master explaining that Ms. Roquemore's performance contributed to "'perplexing' twists and turns" in the case that need not have generated the high fees and costs that it had, and ultimately reducing fees by 20% "due to unreasonable overlitigation"). Once again, Ms. Roquemore has proceeded as if the special masters' collective concerns are of no occasion.

As noted, I am prepared to award fees in this case. And despite the outcome of the matter, the parties' dispute was allowed to proceed to expert discovery. Hence, I am reluctant to make significant reductions to Ms. Roquemore's time. Still, special masters are not obligated to award fees even in unsuccessful cases found to possess reasonable basis. And I do not deem it "reasonable" for lawyers to generate hundreds of thousands of dollars in cases where issues with entitlement are fairly clear at the outset. Thus, in the interests of the "rough justice" that special masters may exercise when awarding fees in cases that did not succeed, I hereby reduce the total amount of hours devoted to this matter by **ten percent**, resulting in a discrete reduction of **$17,876.56** in attorney's fees.[10] *See Fox v. Vice*, 563 U.S. 826, 837-38 (2011). After applying both reductions, the total adjusted fees award is **<u>$160,889.04</u>**.[11]

## III. Calculation of Litigation Costs

Just as they are required to establish the reasonableness of requested fees, petitioners must also demonstrate that requested litigation costs are reasonable. *Presault v. United States*, 52 Fed. Cl. 667, 670 (2002); *Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (Fed. Cl. 1992). Reasonable costs include the costs of obtaining medical records and expert time incurred while working on a case. *Fester v. Sec'y of Health & Human Servs.*, No. 10-243V, 2013 WL 5367670, at *16 (Fed. Cl. Spec. Mstr. Aug. 27, 2013). When petitioners fail to substantiate a cost item, such as by not providing appropriate documentation to explain the basis for a particular cost, special masters have refrained from paying the cost at issue. *See, e.g.*, *Gardner-Cook v. Sec'y of*

---

[10] Calculated by: (total fees amount requested of $178,804.80) – (reduction of $39.20) x 10% = reduction of $17,876.56.

[11] Calculated by: (total fees amount requested of $178,804.80) – (reduction of $39.20) – (reduction of $17,876.56) = adjusted fee award of $160,889.04.

*Health & Human Servs.*, No. 99-480V, 2005 WL 6122520, at *4 (Fed. Cl. Spec. Mstr. June 30, 2005).

Petitioner requests $30,105.56 in outstanding litigation costs, which include $25,900.00 in Dr. Steinman's expert fees, $3,250.00 in Dr. Drew's expert fees, and $955.56 accrued by Ms. Roquemore for postage fees, copying costs, and other miscellaneous litigation expenses. (ECF Nos. 122-4, 122-9, & 122-12). Additionally, Petitioner seeks reimbursement of $4,998.81 of costs he personally incurred to litigate his claim, which include $400.00 for filing the petition, $2,000.00 for retaining Dr. Steinman, $2,500.00 for retaining Dr. Drew, and $98.81 for copying, faxing, and shipping materials. (ECF Nos. 122-5, 122-6).

These costs are typical in the Vaccine Program and have been substantiated. Petitioner's litigation costs of **$35,104.37** shall therefore be awarded in full without reduction.

## CONCLUSION

The Vaccine Act permits an award of reasonable attorney's fees and costs for successful claimants. Section 15(e). Accordingly, I hereby GRANT, in part, Petitioner's Fees Motions. Petitioner and her counsel are awarded the total amount of **$195,993.41** [12] as follows:

**Ms. Lisa A. Roquemore, Esq.**:

| | |
|---|---|
| Requested Attorney's Fees: | $178,804.80 |
| Reduction of Attorney's Fees: | - $ 17,915.76[13] |
| Awarded Attorney's Fees: | $160,889.04 |
| Requested Attorney's Costs: | $30,105.56 |
| Awarded Attorney's Costs: | $30,105.56 |
| Total Awarded Attorney's Fees and Costs: | **$190,994.60** |

**Petitioner**:

| | |
|---|---|
| Requested Petitioner's Costs: | $4,998.81 |
| Total Awarded Petitioner's Costs: | **$4,998.81** |

[12] This amount is intended to cover all legal expenses incurred in this matter. This award encompasses all charges by the attorney against a client, "advanced costs" as well as fees for legal services rendered. Furthermore, § 15(e)(3) prevents an attorney from charging or collecting fees (including costs) that would be in addition to the amount awarded herein. *See generally Beck v. Sec'y of Health & Human Servs., 924 F.2d 1029 (Fed. Cir.1991).*

[13] Calculated by: (reduction of $39.20) + (reduction of $17,876.56) = total reduction of $17,915.76.

Petitioner is awarded attorney's fees and costs in the total amount of **$195,993.41** (representing $190,994.60 for Ms. Lisa A. Roquemore's fees and costs and $4,998.81 for Petitioner's personally incurred costs) to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court **SHALL ENTER JUDGMENT** in accordance with the terms of this Decision.[14]

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Chief Special Master

[14] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.